IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE STANDARD FIRE           )
INSURANCE COMPANY,          )
                            )
            Plaintiff,      )
                            )
v.                          )       Civil Action No. 3:12CV181–HEH
                            )
CHRISTOPHER ARMSTRONG,      )
*pro se*,                   )
                            )
            Defendant.      )

## MEMORANDUM OPINION
### (Granting Motion for Summary Judgment)

The Standard Fire Insurance Company ("Standard") brought this action seeking a

declaratory judgment that it is not obligated to cover losses under an insurance policy

covering a boat owned by *pro se* Defendant Christopher Armstrong ("Armstrong"). The

coverage dispute arose when Armstrong's boat collided with an anchored sailboat. Standard

takes the position that the accident is excluded from coverage under the terms of the policy,

because it occurred while Armstrong was engaged in illegal activity—operating a boat while

intoxicated.

Standard has now filed a Motion for Summary Judgment (ECF No. 23) accompanied

by a *Roseboro* notice, as required by E.D. Va. Loc. R. 7(K). Armstrong has not filed any

response and the time in which to do so has passed.[1] Standard's submissions adequately

---

[1] This Court previously stayed the matter while the Motion for Summary
Judgment was pending, because it learned that the Armstrong had filed for bankruptcy.
*In re Christopher W. Armstrong and Misty E. Armstrong*, No. 8:13bk224-MGW (M.D.
Fla. filed Jan. 9, 2013). The stay has since been lifted pursuant to the bankruptcy court's

present the issues for the Court's decision, and so the Court dispenses with oral argument.

For the reasons that follow, the Court will grant Standard's Motion for Summary Judgment.

## I. BACKGROUND[2]

Armstrong owns a forty-six foot Silverton Motor Yacht named "Seabastion,"

which he insured pursuant to a policy issued by Standard (the "Policy"). According to a

"Dishonest or Illegal Acts" exclusion set forth in the Policy, Standard will "not cover any

loss, damage, injury or expense that occurs while any insured is engaged in any . . .

illegal act, regardless of whether such person is convicted of such act by a criminal

court." (Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") Ex. 1 at 29, ECF No. 24-1.)

While operating the "Seabastion" in Fishing Bay near the Virginia coast on the

evening of July 14, 2011, Armstrong collided with a sailboat named "Voyager," causing

a ten-foot hole in her starboard side. (Dep. of Christopher Armstrong ("Armstrong

Dep.") at 14:11-16:25, 22:6-24:25; ECF No. 24-2; Dep. of Officer Christopher Miller

("Miller Dep.") at 6:6-10:24, ECF No. 24-3; Pl.'s Ex. 8.) The Voyager's owners, Carol

---

order granting relief from the stay. (ECF No. 28-1.) Upon lifting the stay, the Court *sua sponte* granted ten days leave to Armstrong to file an opposition brief, if any. That deadline has since passed and Armstrong has filed nothing. Thus, the matter is now ripe for resolution.

[2]Pursuant to Fed. R. Civ. P. 56(c) and consistent with E.D. Va. Loc. R. 56(B), Standard offers a list of undisputed facts supported by corresponding exhibits. Because Armstrong has not responded, those facts may be accepted as true for purposes of resolving the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion"); E.D. Va. Loc. R. 56(B) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

and Alan Herrle (the "Herrles"), were on board at the time but uninjured in the accident. (Armstrong Dep. at 27:1-28:1.) Upon encountering Armstrong, law enforcement personnel detected a strong smell of alcohol. (Miller Dep. at 11:13-17.) A breathalyzer revealed his blood alcohol content to be .137—well above the legal limit of .08. (*Id.* at 12:14-22.) Coast Guard officers on the scene also discovered two marijuana smoking devices and marijuana. (*Id.* at 14:6-17:9.) Armstrong admitted to smoking marijuana and drinking shortly before the accident. (Miller Dep. at 17:8-14, 18:2-9.)

Shortly after the collision, Armstrong was arrested for operating a motorboat under the influence in violation of Va. Code § 29.1-738. (*Id.* at 49:9-50:7.) An additional charge was later added for possession of marijuana in violation of Va. Code § 18.2-250.1. (*Id.* at 62:21-63:4.) He pled guilty in Middlesex County, Virginia General District Court to the charge of operating a motor boat in a reckless manner or intoxicated, and the other charges were dismissed. (*Id.* at 64:22-65:10.) The Coast Guard also noted that Armstrong's conduct violated 46 U.S.C. § 2302(c), which prohibits operating a vessel under the influence of alcohol on navigable waters, but the record does not reflect that he was ever charged under this federal statute. (Pl.'s Mem. Ex. 6.)

After the accident, an attorney for the Herrles twice sent to Standard written demands for payment of approximately $55,000.00 in property damage to the sailboat Voyager. (Pl.'s Mem. at ¶¶ 40-41.) Responding to these demands, on January 13, 2012, Standard declined coverage, citing the "Dishonest or Illegal Acts" exclusion of the Policy. (*Id.* Exs. 18-19.) Invoking this Court's admiralty jurisdiction, *see Wilburn Boat Co. v. Fireman's Ins. Co.*, 348 U.S. 310, 313 (1954), Standard filed the instant

declaratory judgment action seeking a declaration that it has no obligation to pay damages under the Policy. Initially represented by counsel, Armstrong moved to dismiss, and that motion was denied. Subsequently, Armstrong terminated his attorney and proceeded to defend himself *pro se*. Now, Standard moves for summary judgment and that motion is unopposed.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Thus, the court must view the record in the light most favorable to the nonmoving party, and must draw all reasonable inferences in its favor. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). However, "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see also Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." *Thompson v. Everett, Inc. v. Nat'l Cable Adver., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995).

## III. DISCUSSION

The issue in this case is very simple: does the "Dishonest or Illegal Acts" exclusion in the Policy preclude coverage for an accident occurring while Armstrong was operating his boat under the influence—in violation of both state and federal law. The language at issue here unambiguously excludes coverage under these circumstances. Accordingly, the Court will grant Plaintiff's Motion for Summary Judgment and issue the declaratory relief requested.

Virginia law governs the Policy at issue, because there is no controlling admiralty rules governing enforceability of "Dishonest or Illegal Acts" exclusions, and the Policy was issued and delivered in Virginia. *Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line*, 160 F.3d 170, 174 (4th Cir. 1998) (holding that state law applies where there is no governing admiralty rule); *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993) (citation omitted) ("[G]enerally, the law of the place where an insurance contract is written and delivered controls issues as to its coverage.").

Virginia applies the same rules of construction to insurance policies as it does for contracts generally. *Floyd v. N. Neck Ins. Co.*, 427 S.E.2d 193, 196 (Va. 1993). The plain meaning of the insurance policy governs absent any ambiguity. *Virginia Farm Bureau Mut. Ins. Co. v. Hodges*, 385 S.E.2d 612, 614 (Va. 1989). "Reasonable policy exclusions not in conflict with statutes will be enforced; to be effective, the exclusionary language must clearly and unambiguously bring the particular act or omission within its scope." *Floyd*, 427 S.E.2d at 196. The insurance company bears the burden of

establishing that the conduct unambiguously falls within the exclusionary language. *PBM Nurtritionals, LLC v. Lexington Ins. Co.*, 724 S.E.2d 707, 713 (Va. 2012).

Here, the Policy language unambiguously excludes coverage for any loss "that occurs while any insured is engaged in any . . . illegal act, regardless of whether such person is convicted of such act by a criminal court." (Pl.'s Mem. Ex. 1 at 29.) The facts are undisputed here that Armstrong was engaged in the crime of operating his boat under the influence of alcohol when his vessel collided with another. (Armstrong Dep. at 14:11-16:25, 22:6-24:25.) Armstrong pleaded guilty to this offense in state court. (*Id.* at 64:22-65:10.) Thus, there can be no doubt that Armstrong's conduct at the time of the boating accident fell within the plain terms of the "Dishonest or Illegal Acts" exclusion. *See, e.g., Gulf Underwriters Ins. Co. v. KSI Servs., Inc.*, 233 Fed. App'x 239, 242 (4th Cir. 2007) (denying coverage for embezzlement under an exclusion for dishonest or illegal acts).

Moreover, the Court is unaware of any Virginia statute forbidding an exclusion of coverage for dishonest and illegal actions where an intoxicated boater causes property damage. *See generally*, Va. Code §§ 38.2-2204 through 38.2-2205, -2232 (2013) (provisions governing watercraft). Nor can the Court find any decision suggesting that it would be contrary to Virginia's public policy to enforce the "Dishonest or Illegal Acts" exclusion under these circumstances. Although the Court cannot find any Virginia decisions addressing similar circumstances, the Court of Appeals of Michigan has enforced a nearly identical exclusion where a boater was intoxicated. *See, e.g., Auto Club Group Ins. Co. v. Smith*, No. 294697, 2011 Mich. App. LEXIS 176, at *14 (Mich.

Ct. App. Jan. 25, 2011), *appeal denied*, 799 N.W.2d 560 (Mich. 2011) (enforcing criminal acts exclusion where insured was operating a boat while intoxicated). The Michigan court's reasoning is consistent with Virginia's rule that "[r]easonable policy exclusions not in conflict with statutes will be enforced." *Floyd*, 427 S.E.2d at 196.

## IV. CONCLUSION

In sum, the language of the "Dishonest and Illegal Acts" exclusion unambiguously encompasses the boating accident of July 14, 2011. Armstrong collided with the Herrles' vessel off the Virginia coast while he was intoxicated. There is no legal basis for this Court to disregard this exclusion, which the parties agreed upon at the time that the Policy was delivered. Accordingly, Standard's Motion for Summary Judgment will be granted and the Court will issue a declaratory judgment that Standard has no obligation to provide coverage in this case.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: May 8, 2013
Richmond, Virginia

7